IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| KAMI WAILEHUA,<br><br>       Plaintiff,<br><br>  vs.<br><br>UPS SUPPLY CHAIN SOLUTIONS, INC.,<br><br>       Defendant. | Civil No. 22-00280 MWJS-KJM<br><br>ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION |

## **INTRODUCTION**

The Court denied Defendant UPS Supply Chain Solutions, Inc.'s (UPS) motion for summary judgment on May 3, 2024 (the MSJ Order). ECF No. 47. UPS has now filed a timely motion for reconsideration of that MSJ Order. ECF No. 50. In this new motion, UPS contends that the Court committed "manifest errors of law and/or fact." *Id.* at PageID.489.

The Court concludes that UPS has not identified any error in the MSJ Order, and therefore DENIES the motion for reconsideration. To expedite the issuance of this ruling, the Court assumes the reader's familiarity with the underlying facts and background of this matter, as well as with the MSJ Order.

//

//

# **DISCUSSION**

1. For purposes of summary judgment, the parties did not dispute that an essential function of UPS's Specialist II position (post-COVID-19) was the ability to walk "constantly," meaning a range of 67 to 100 percent of a workday. In the MSJ Order, the Court concluded that the summary judgment record allowed the reasonable inference that Wailehua could meet this "constant" walking requirement if she were able to walk somewhere *within* the range of 67 to 100 percent. *See, e.g.*, ECF No. 47, at PageID.471-72.

In its motion for reconsideration, UPS contends that Wailehua could satisfy this "constant" walking requirement only if she could hit the very top of the range—that is, 100 percent, or a full eight hours, of walking a day. *See* ECF No. 50-1, at PageID.500 (asserting that a Specialist II must be "able to walk up to 100% of her shift on occasion"); *see also id.* at PageID.501 n.1 ("Defendant did not indicate where within this range the walking requirements of the position fell, because the ability to perform the entire 67% to 100% range *was* the walking requirement."). And UPS argues that it was manifest error for the Court not to accept UPS's factual understanding as a matter of law.

The problem for UPS is that nothing in its summary judgment papers took the position—let alone established as a matter of law—that a Specialist II employee must be able to walk the full 100 percent of a workday, as opposed to

simply falling somewhere within the range. Consider UPS's concise statement of facts. ECF No. 32. Under this District's Local Rules, such a statement must assert "each material fact that the movant contends is undisputed and essential for the court's determination of the motion." LR56.1(a). Yet UPS's concise statement nowhere asserts that a Specialist II would need to be capable of walking for a full eight hours. Instead, it says generally that after the COVID-19 pandemic, the Specialist II position required the ability "to constantly walk around the facility and between HSC's warehouse and the airport hub," without specifying what percentage of a day that would entail. ECF No. 32, at PageID.127-28 (¶ 21). And it asserts that Wailehua could not meet this requirement, again without ever suggesting that it was because she could not walk 100 percent of a workday. *Id.* at PageID.128-29 (¶¶ 25, 30) (noting that Wailehua could only walk "34% to 67% of her shift," and that she therefore was unable to "perform the constant walking requirement").

In contrast, UPS's concise statement clearly asserts that "[t]he ability to work full time hours was an essential function of the Specialist II position," *id.* at PageID.127 (¶ 15), meaning that an employee could not meet that condition if they could not work the full eight hours. Put another way, UPS knows how to assert that an employee must be able to do something for a full eight hours, but its concise statement did not make any such assertion when it came to walking.

3

To be sure, in saying generally that the Specialist II position required "constant" walking after the COVID-19 pandemic, UPS's concise statement of facts references the attached declaration of Gerald Yee. *Id.* at PageID.127-28 (¶ 21). But this cross-reference does not aid UPS, because Yee's declaration suffers from a similar shortcoming: it nowhere asserts that "constant" walking requires being able to walk a full 100 percent of the day. Instead, Yee's declaration makes only the general assertion that UPS determined Wailehua "was unable to . . . perform the constant walking requirement of the Specialist II position." ECF No. 32-2, at PageID.138-39 (¶ 19).

The same shortcoming appears in UPS's memorandum in support of its summary judgment motion. There, UPS asserts that after the COVID-19 pandemic, the Specialist II position required the ability "to constantly walk around the facility and between HSC's warehouse and the airport hub." ECF No. 31-1, at PageID.110-11 (citing Def.'s Concise Statement of Facts ¶ 21). It asserts generally that Wailehua's work restriction of "no more than 'occasional' walking rendered her unqualified for the position," *id.* at PageID.111; *see also id.* (asserting generally that the Specialist II position required "constant walking (67-100% of her shift)"). But UPS nowhere argued that the Specialist II position required the ability to walk the full 100 percent of a workday, as opposed to being able to walk somewhere within that range.

4

At trial, UPS may wish to present evidence that after the COVID-19 pandemic, a Specialist II was required to be able to walk the full 100 percent of the workday, if such evidence exists. UPS might also consider offering testimony about the nature of "constant" walking ranges of this sort—for instance, UPS might be aware of evidence suggesting that, by convention or common understanding, an essential function range of this sort should be understood as requiring an ability to hit the high end of the range, not just fall within the range. Evidence along these lines would strengthen UPS's hand beyond what it presented to this Court at the summary judgment stage.

But at the summary judgment stage, the Court can only base its determinations on the evidence UPS chose to put before it. And given that UPS chose not to offer any evidence in support of the factual assertion it now makes in its motion for reconsideration—that an employee who could perform walking *within* the 67 to 100 percent range would *still* be unqualified if they could not walk the full 100 percent—it would have been mere speculation for the Court to assume that UPS could have presented such evidence, or that such evidence, somewhere outside the summary judgment record, might exist. After all, at the summary judgment stage, the Court is required to construe evidence, and gaps in evidence, in the non-moving party's favor—not UPS's.

5

2. UPS rejoins that the MSJ Order accepted one of Wailehua's contentions based on "mere allegation and speculation." ECF No. 50-1, at PageID.497 (alterations omitted). In particular, UPS argues that "Plaintiff presented only mere allegation and speculation at the April 12, 2024 hearing on Defendant's Motion for Summary Judgment that she was within a percentage of meeting the walking requirement." *Id.* at PageID.498.

But it is not speculation that Wailehua's walking restriction range fell, logically, within a percentage of the Specialist II walking requirement range. It is undisputed that as of the summer of 2020, Wailehua could walk "frequently," which meant between 34 and 66 percent of the workday. It is similarly undisputed that as of that time, a Specialist II would be required to walk "constantly," defined as a range of 67 to 100 percent of the workday. It takes simple arithmetic to see that the high end of Wailehua's range and the low end of UPS's range are a percentage away from each other.

And, as noted, at the summary judgment stage, UPS offered no evidence to show that Wailehua would have needed to be able to walk a full 100 percent of the workday to meet the Specialist II walking requirement. The summary judgment record, therefore, allowed the reasonable inference that Wailehua could satisfy the walking requirement simply by falling within the range of 67 to 100 percent. With a maximum walking ability of 66 percent, Wailehua was merely a percentage away

6

from that range.  None of this requires speculation.  It simply requires pointing out that UPS did not, through evidence, close off these logical possibilities at the summary judgment stage.[1]

       3.  UPS pivots to an alternative argument:  even if Wailehua was a percentage away from meeting the requirements of the Specialist II position, it was still speculative to assume that she could improve any further.  As UPS puts it, "[p]ast improvement does not indicate her restriction might improve in the future." *Id.*  UPS therefore argues that "[t]he Court's determination that a genuine dispute existed as to whether Plaintiff's walking restriction may improve was speculation." *Id.*

As a general proposition, it is certainly true that past improvement does not necessarily mean that future improvement is on the way.  But whether that general proposition should govern any particular factual context depends on the significance of the past improvement at issue and the extent of the needed future improvement.  If, for example, a person goes from not being able to work more than four hours to, in relatively short order, being able to work a full workday—

---

[1] UPS also argues that Wailehua did not distinctly point out this gap in its summary judgment evidence until oral argument.  ECF No. 50-3, at PageID.511-12.  But it was UPS's burden to establish, through its motion for summary judgment, concise statement, and memorandum in support, that summary judgment was appropriate.  To the extent UPS's suggestion is that Wailehua waived her right to point out an evidentiary shortcoming in UPS's written submissions, the Court declines to so find under these circumstances.

and if these dramatic improvements are the result of physical therapy efforts that are still ongoing—nothing in the law requires a factfinder to feign ignorance of the commonsense reality that that person's physical condition is quite likely to improve at least a bit more.

And that explains why a reasonable jury could infer, in this case, that Wailehua's ability to walk could have improved at least somewhat. On the one hand, the summary judgment record allows the reasonable inference that her recent improvement was dramatic: Wailehua had a longstanding "permanent" restriction against full-time employment—a restriction dating back to 2015. In 2019 and 2020, warned that she could be terminated from her position with UPS, Wailehua devoted herself to physical therapy and, by 2020, the supposedly "permanent" restriction against full-time work was gone. A reasonable factfinder could conclude that these were significant improvements, and that they indicated Wailehua's continued efforts at physical therapy were bearing fruit. And on the other hand, a reasonable factfinder could also infer that she only needed to make slight improvements in the future. Although Wailehua's walking restriction (of no more than 66 percent of the workday) remained, UPS's summary judgment evidence, as explained above, allowed the reasonable inference that Wailehua needed only to improve to at least 67 percent. Based on the summary judgment record, a reasonable factfinder could infer that with continued physical therapy,

8

improvement of an additional percentage point—from 66 percent to 67 percent of the workday—was realistic.[2]

In any event, the possibility of further improvements in Wailehua's walking ability was not necessary to the Court's denial of UPS's motion for summary judgment. The Court's principal reason for denying summary judgment was that if (as UPS's summary judgment evidence allowed a reasonable factfinder to conclude) Wailehua needed only to improve her walking by a single percentage, then UPS had an obligation to engage in a good faith interactive process to assess whether any reasonable accommodation could address that miniscule gap between Wailehua's abilities and the requirements of the job. As the Court explained in the MSJ Order, "in determining whether the employee would have been able to perform the job with accommodations . . . [a reasonable factfinder] is entitled to bear in mind that had the employer participated in the interactive process in good faith, there may have been other, unmentioned possible accommodations." ECF

---

[2] UPS cites authorities supporting the proposition that an employer is entitled to rely on medical opinions from an employee's physician. ECF No. 50-1, at PageID.502-06. The Court takes no issue with those cases, as far as they go—an employer can rely on a physician's medical opinions, even where an employee subjectively believes they can perform the job. But the issue here is a different one: When an employee's physical therapy efforts have produced dramatic improvements (improvements that show a physician's findings of "permanent" restrictions are, themselves, not really permanent), and when only slight additional improvement is needed for that employee to be qualified for her former position, may an employer simply disregard those dramatic improvements as a matter of law? At least on the summary judgment record in this case, the answer is no.

No. 47, at PageID.472 (cleaned up) (new alteration added) (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1115-16 (9th Cir. 2000)).

4. UPS next argues that it does not matter if Wailehua could possibly have improved or if she was close to being able to perform the "constant" walking requirement. All that matters is that UPS was "presented with clear medical documentation identifying a permanent restriction." ECF No. 50-1, at PageID.499. In UPS's view, once a doctor says an employee is permanently unable to perform the job, the employer is entitled to terminate the disabled employee, and the employer has no obligation "to determine how close that restriction is to being able to perform an essential function." *Id.*

This argument reflects a misunderstanding of the ADA and the interactive process. Under the ADA, if an employee is within striking distance of being able to meet the essential functions of her job, and if the employee is seeking accommodations to allow her to return to work, the employer cannot simply ignore these facts. Nor may the employer simply terminate the employee on the ground that medical documentation shows they cannot perform the essential functions of the job. Instead, the employer must engage in a good faith interactive process to assess whether there are any reasonable accommodations that would make it possible for the employee to perform those essential functions. And when an employer fails to meet this burden, "summary judgment is available to the

10

employer only when a reasonable factfinder '*must* conclude that there would in any event have been no reasonable accommodation available.'" *Chan v. Wells Fargo Advisors, LLC*, 124 F. Supp. 3d 1045, 1062 (D. Haw. 2015) (quoting *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006)).

Turn back to Wailehua's case. As explained above, the summary judgment record allowed the inference that Wailehua needed only to improve slightly (a single percentage of the workday) to fall within the "constant" walking range required of a Specialist II. It is true that Wailehua's physician concluded that she could not meet the "constant" walking requirement. But given how close Wailehua was to meeting the requirement, the Court cannot say, at the summary judgment stage, that there could not possibly have existed any reasonable accommodations that would have allowed Wailehua to bridge the gap between her current walking abilities and the requirements of the job. *See Chan*, 124 F. Supp. 3d at 1062.

5. Finally, UPS argues that summary judgment should have been granted because, even if reasonable accommodations might have existed, Wailehua did not identify one. According to UPS, Wailehua only suggested additional leave, but "[t]he record contained no evidence that further leave may have enabled Plaintiff to perform 'constant' walking, and the indefinite nature of Plaintiff's leave rendered further leave unreasonable." ECF No. 50-1, at PageID.507.

11

But to the extent that some period of additional leave was necessary to allow discussion about other reasonable accommodations, the Court cannot say, as a matter of law, that some additional leave would not itself have been a reasonable accommodation. And here, the gaps in UPS's summary judgment evidence allow the reasonable inference that Wailehua was just a percentage away from meeting the "constant" walking requirement. In light of that reasonably inferable fact, UPS had a clear responsibility to engage in a good faith interactive process to discuss whether any reasonable accommodations existed that could bridge that small gap. And the summary judgment record allows the further inference that UPS made no effort to explore, in a good faith interactive process with Wailehua, whether any reasonable accommodations existed for her walking restriction. Under these circumstances, the Court cannot conclude, as a matter of law, that there were no reasonable accommodations that could have allowed an employee capable of walking 66 percent of the day to perform a job that required walking 67 percent of the day. Instead, a reasonable factfinder could conclude that some additional period of leave was itself a reasonable accommodation, because it would have allowed the parties additional time to discuss other available accommodations.

*   *   *

It bears mentioning, one final time, that the Court is not finding that Wailehua was just a percentage away from meeting the "constant" walking

requirements of the Specialist II position.  Nor is the Court finding that an employee could meet those requirements by meeting the low end of the range.  The Court's more limited point is simply that UPS—by choosing not to submit evidence to back up its current assertion that a Specialist II must be able to walk 100 percent of the workday—has left gaps in the evidentiary record that a reasonable factfinder could construe against UPS.  And, at the summary judgment stage, the Court cannot fill these gaps for UPS, but instead construes all reasonable inferences against it.  That is what the Court's MSJ Order did.

## CONCLUSION

For the foregoing reasons, UPS's motion for reconsideration is DENIED.

IT IS SO ORDERED.

DATED:  May 22, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
───────────────────────
Micah W.J. Smith
United States District Judge

Civil No. 22-00280 MWJS-KJM; *Kami Wailehua v. UPS Supply Chain Solutions, Inc.*; ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION

13